■ In the Matter of the Claim of RICHARD GIBSON, Respondent, v CARRIER CORPORATION, Appellant. WORKERS' COMPENSATION BOARD, Respondent. [762 NYS2d 183] —Crew III, J.P. Ap-

peal from a decision of the Workers' Compensation Board, filed July 19, 2002, which ruled that claimant was discharged by the employer in violation of Workers' Compensation Law § 120.

Claimant sustained a work-related back injury in March 1991 and thereafter sought and received workers' compensation benefits. Approximately one year later, and at the employer's request, claimant sought and obtained medical clearance from his physician to return to work on a limited basis and thereafter reported to the employer's medical department for evaluation. Rather than undergoing the anticipated physical examination, however, claimant was advised that he was suspended for excessive absenteeism and was terminated from his position effective March 30, 1992. In response, in May 1993, claimant filed a discrimination complaint against the employer pursuant to Workers' Compensation Law § 120 contending that he was fired in retaliation for receiving workers' compensation benefits. Ultimately, claimant and the employer reached a settlement agreement in June 1994, pursuant to the terms of which claimant's termination was rescinded and expunged from his employment record and his pension and insurance benefits were reinstated and restored in exchange for a general release of any claims against the employer stemming from the 1992 termination. Accordingly, claimant's discrimination claim was withdrawn.

Although claimant thereafter attempted to return to work, the employer notified claimant, by letter dated July 6, 1994, that he again was being terminated, this time pursuant to the provisions of the underlying collective bargaining agreement that prohibited claimant's continuous absence from employment for more than three years. Contending that this second termination also was discriminatory, claimant again filed a complaint against the employer pursuant to Workers' Compensation Law § 120. In response, the Workers' Compensation Board reopened claimant's initial discrimination claim and restored the matter to the trial calendar.

Following a series of hearings, a Workers' Compensation Law Judge "killed" claimant's second discrimination claim, combined it with the initial 1993 claim and determined that the employer indeed had violated Workers' Compensation Law § 120 when it discharged claimant in March 1992. Additional hearings on the issue of damages ensued, at the conclusion of which the employer was ordered to, inter alia, restore claimant to full employment and pay lost earnings, benefits and counsel fees. The Board thereafter affirmed that decision, prompting this appeal by the employer.

Initially, we reject the employer's contention that the June 1994 settlement agreement divested the Board of jurisdiction over claimant's Workers' Compensation Law § 120 claim and barred the reopening thereof. Assuming, without deciding, that the 1994 settlement agreement would not have run afoul of Workers' Compensation Law former § 32,* we note only that the Board is vested with continuing jurisdiction over workers' compensation claims (*see* Workers' Compensation Law § 123) and, as such, was well within its authority to reopen the underlying claim. Nor are we persuaded that claimant's Workers' Compensation Law § 120 claim is barred by Labor Management Relations Act § 301 (29 USC § 185), which preempts state law claims that require interpretation of the terms of a collective bargaining agreement. Claimant's discrimination claim, the resolution of which turns upon questions of fact regarding the employer's conduct and motivation for the allegedly retaliatory discharge, as opposed to a specific provision of the governing collective bargaining agreement, simply is not preempted by the federal statute (*see Lingle v Norge Div. of Magic Chef*, 486 US 399, 407 [1988]; *cf. Matter of Valentino v American Airlines*, 131 AD2d 6, 8-9 [1987]).

Turning to the merits, in order to prevail upon his claim under Workers' Compensation Law § 120, claimant bore the burden of proving that the employer retaliated against him for seeking workers' compensation benefits (*see Lawrik v Superior Confections*, 300 AD2d 777, 778 [2002]). Specifically, claimant was required to demonstrate a causal nexus between his efforts to obtain workers' compensation benefits and the employer's allegedly retaliatory conduct (*see id.*). In this regard, it is not the role of this Court to second-guess the Board's resolution of factual and credibility issues, and the mere fact that there may be evidence in the record to support contrary conclusions is of no moment (*see Matter of Drakes v Bank Julius Baer & Co.*, 301 AD2d 799, 800 [2003]). If the Board's decision is supported by substantial evidence in the record as a whole, it will not be disturbed.

To be sure, there is evidence in the record to support the employer's assertion that claimant was discharged pursuant to neutral terms of the collective bargaining agreement—namely, those governing absenteeism. The Board, however, was free to credit the testimony of union officials regarding the "disappearing light-duty policy" adopted by the employer in workers'

---

* In 1994, Workers' Compensation Law former § 32 provided that "[n]o agreement by an employee to waive his right to compensation under [the Workers' Compensation Law] shall be valid."

compensation and disability cases, whereby the employer would encourage employees to obtain medical clearance to return to light-duty work and then withdraw the light-duty assignment, resulting in a reduction in the employee's benefit levels due to their reduced disability status. The Board also was entitled to credit claimant's testimony regarding the circumstances leading up to and the timing of claimant's discharge. Thus, based upon our review of the entire record, we cannot say that the Board's findings on this point are not supported by substantial evidence.

We now turn to the issue of damages and counsel fees. During the pendency of this appeal, the Board issued an amended decision, filed May 21, 2003, rescinding the award of back pay for the period May 20, 1996 to March 26, 2001 due to claimant's failure to mitigate his damages and restored the matter to the trial calendar for further development of the record to determine the proper lost earnings award. In light of the Board's amended decision, the employer no longer is aggrieved by this aspect of the damages award and we, therefore, decline to reach that issue on this appeal. The employer's remaining arguments, including those regarding the award of damages and counsel fees, however, have been examined and found to be lacking in merit.

Spain, Carpinello, Mugglin and Kane, JJ., concur. Ordered that the decision is affirmed, without costs.

