Matter of Arena v Upstate Niagara Coop. Inc. (2022 NY Slip Op 05119)

Matter of Arena v Upstate Niagara Coop. Inc.

2022 NY Slip Op 05119

Decided on September 1, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 1, 2022

533376
[*1]In the Matter of the Claim of Michael Arena, Appellant,
v
Upstate Niagara Cooperative Inc. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:August 17, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Vincent Criscuolo & Associates, PC, Rochester (Ryan W. Edwards of counsel), for appellant.
Hamberger & Weiss LLP, Rochester (Stephen P. Wyder Jr. of counsel), for Upstate Niagara Cooperative Inc. and another, respondents.

Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed April 30, 2021, which ruled, among other things, that claimant violated Workers' Compensation Law § 114-a and disqualified him from receiving future wage replacement benefits.
Claimant has an established claim for a work-related injury to his lower back that he sustained in January 2020. A February 2020 MRI showed evidence of a "[r]ight central L4-5 disc extrusion" that, in turn, impinged upon the right L5 nerve roots. Claimant was initially treated conservatively with medication and physical therapy, but he eventually received lumbar interlaminar epidurals in June 2020 and August 2020. Although the epidurals provided claimant with temporary relief and an October 2020 MRI evidenced some improvement, claimant nonetheless experienced a gradual return to his baseline level of low back pain. As a result, between late April 2020 and early August 2020, claimant consistently was classified as 100% disabled. In October 2020, a Workers' Compensation Law Judge ordered the payment of certain awards, directed that the depositions of the evaluating and treating physicians be submitted by a date certain and continued the matter to receive evidence of a potential violation of Workers' Compensation Law § 114-a.
After reviewing claimant's testimony and the surveillance videos provided by the employer and its workers' compensation carrier, a Workers' Compensation Law Judge found, among other things, that despite certain inconsistencies between claimant's testimony and the activities depicted on the surveillance videos, there was insufficient evidence of a Workers' Compensation Law § 114-a violation. As a result, claimant was awarded benefits through January 14, 2021. Upon administrative review, the Workers' Compensation Board reversed, concluding that claimant misrepresented his functional capabilities and finding sufficient evidence to support a violation of Workers' Compensation Law § 114-a. The Board imposed a mandatory penalty from June 4, 2020 to January 14, 2021 (no compensable lost time) and also imposed a discretionary penalty permanently disqualifying claimant from receiving wage replacement benefits. Claimant appeals.
We affirm. "A claimant who, for the purpose of obtaining workers' compensation benefits, knowingly makes a false statement or representation as to a material fact shall be disqualified from receiving any compensation directly attributable to such false statement or representation" (Matter of Ali v New York City Dept. of Corr., 205 AD3d 1247, 1248 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Nappi v Verizon N.Y., 205 AD3d 1181, 1182 [3d Dept 2022]). "A fact will be deemed material so long as it is significant or essential to the issue or matter at hand" (Matter of Williams v New York City Dept. of Corr., 188 AD3d 1382, 1383 [3d Dept 2020] [internal quotation marks, ellipsis and citations omitted]; see Matter of Ortiz v Calvin Maintenance, [*2]199 AD3d 1211, 1212 [3d Dept 2021]). "Notably, feigning the extent of a disability or exaggerating symptoms and/or injuries have been found to constitute material false representations within the meaning of [Workers' Compensation Law § 114-a]" (Matter of Peck v Donaldson Org., 191 AD3d 1078, 1079 [3d Dept 2021] [citations omitted]; accord Matter of Ringelberg v John Mills Elec., Inc., 195 AD3d 1332, 1333 [3d Dept 2021]; see Matter of Nappi v Verizon N.Y., 205 AD3d at 1183). "Whether a claimant has violated Workers' Compensation Law § 114-a is within the province of the Board, which is the sole arbiter of witness credibility, and its decision will not be disturbed if supported by substantial evidence" (Matter of Ali v New York City Dept. of Corr., 205 AD3d at 1248-1249 [internal quotation marks and citations omitted]; accord Matter of Giglia v SUNY Buffalo-Union, 204 AD3d 1287, 1288 [3d Dept 2022]). Indeed, "it is not the role of this Court to second-guess the Board's resolution of factual and credibility issues, and the mere fact that there may be evidence in the record to support contrary conclusions is of no moment" (Matter of Gibson v Carrier Corp., 307 AD2d 616, 618 [3d Dept 2003]; see Matter of Little v Gaines Elec. Contr., Inc., 36 AD3d 1056, 1057 [3d Dept 2007]). Finally, with respect to the issue of penalty, "in addition to rescinding any workers' compensation benefits already paid, the Board may — as an exercise of its discretion — disqualify a claimant from receiving future benefits" (Matter of Ali v New York City Dept. of Corr., 205 AD3d at 1249; see Matter of Nappi v Verizon N.Y., 205 AD3d at 1183).
Here, the carrier presented video surveillance of claimant taken between May 21, 2020 and July 30, 2020 — a period of time during which claimant was deemed to be 100% disabled. The videos depict claimant engaged in, among other things, a variety of gardening activities, including using a post hole digger, shovel, push broom and reciprocating saw, carrying a bag of mulch, disposing of shrubbery, moving large landscaping stones and repeatedly bending between 70 degrees and 90 degrees and kneeling to perform the tasks at hand. Additional videos show claimant climbing a step ladder to take down decorations from his wedding, as well as carrying folding tables and chairs and placing those items in a storage shed and the back of a truck. Finally, claimant is seen carrying two, 30-can packs of beer and driving for more than two hours from New York to Pennsylvania.
Claimant correctly notes that some of the foregoing activities are consistent with the medical testimony regarding his capabilities during the relevant time frame, that he was advised to remain as active as he could and that it was anticipated that he would have good days and bad days. On the other hand, claimant was consistently classified as 100% disabled during the time period encompassed by the surveillance videos and, based upon their examination of and the history obtained from [*3]claimant, the treating and evaluating physicians opined that claimant would not be capable of repeatedly engaging in certain of the activities depicted therein, including routinely bending at the waist to 90 degrees and holding that position in order to, among other things, use a reciprocating saw. Even discounting the import of the medical testimony,[FN1] there nonetheless is ample support for the Board's finding that claimant's testimony was inconsistent with the activities depicted on the surveillance videos and that he downplayed the extent of his participation therein.
With respect to his gardening activities, claimant repeatedly testified that his wife performed 99% of the work and that his contributions, which he characterized as "[m]inuscule," largely consisted of "moral support." Although claimant acknowledged that he moved several landscaping rocks, he believed that he only demonstrated how to utilize a post hole digger and could not recall whether he used a Sawzall to cut up and remove certain shrubbery. As the Board observed, such testimony stood in stark contrast to the surveillance videos, wherein claimant is seen carrying a bag of mulch, using a Sawzall, a shovel, a weed whacker and a post hole digger, and repeatedly bending — often to 90 degrees — and holding that position in order to dig or pick up tools and yard debris. At various points in the surveillance videos, claimant is also observed carrying and storing ladders, tools, a folding table and chairs.
Upon reviewing claimant's testimony and the surveillance videos, we find that there is substantial evidence to support the Board's conclusion that claimant made material misrepresentations regarding the extent of his activities and, in so doing, violated Workers' Compensation Law § 114-a (see generally Matter of Ali v New York City Dept. of Corr., 205 AD3d at 1249). Accordingly, imposing a mandatory penalty from June 4, 2020 to January 14, 2021 (no compensable lost time) was warranted (see Workers' Compensation Law § 114-a [1]). As to the discretionary penalty, the Board found claimant's attempt to downplay or minimize his activities to be sufficiently egregious to warrant permanent disqualification from further wage replacement benefits. Given that the record as a whole supports this finding, and in light of the limitations imposed upon our review of an administrative penalty (see Matter of Barros v John P. Picone, Inc., 188 AD3d 1397, 1400 [3d Dept 2020]), we will not disturb it. Claimant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Egan Jr., J.P., Pritzker, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the decision is affirmed, with costs.

Footnotes

Footnote 1: It does not appear that any of the physicians reviewed the surveillance videos prior to testifying.